**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

CLARENDON AMERICA INSURANCE
COMPANY,

      Plaintiff,

v.                                   Case No. 8:05-cv-1662-T-17-TGW

BAYSIDE RESTAURANT, LLC d/b/a
RATTLEFISH RAW BAR & GRILL,
CJ MARINA d/b/a TAMPA BAYSIDE
MARINA and HOWARD CUSHMAN,

      Defendants.

_____/

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

This cause is before the Court on Plaintiff's Motion for Summary Judgment filed May 30, 2008 (Dkt. 131); Defendants' Motion for Summary Judgment filed May 30, 2008 (Dkt. 132); Plaintiff's response thereto (Dkt. 138); and Defendants' response thereto (Dkt. 140). For the reasons set forth below, the Plaintiff's Motion for Summary Judgment against Defendants is **GRANTED** and Defendants' Motion for Summary Judgment against Plaintiff is **DENIED**. The following are the undisputed facts of this case.

## BACKGROUND

Defendant, Bayside Restaurant, LLC d/b/a Rattlefish Rawbar & Grill ("Bayside"), purchased liability insurance coverage from Plaintiff, Clarendon America Insurance ("Clarendon"), for the period of December 5, 2003 to December 10, 2004 (Dkt. 131, 132). Bayside procured commercial general liability insurance through its agent, Lassiter-Ware (Dkt. 132), who received bids from various insurance companies, including one submitted by Clarendon's agent, Roehrig & MacDuff

(Dkt. 132). One month after Clarendon agreed to insure Bayside, Clarendon ordered Sutton Inspection Bureau, Inc. to conduct an inspection of the restaurant on January 6, 2004 (Dkt. 138). The survey disclosed three deficiencies in the premises (Dkt. 132). As a consequence, Clarendon requested that Bayside correct the deficiencies or risk cancellation of its coverage (Dkt. 132). Bayside subsequently corrected the identified problems and Clarendon, in turn, left the policy in force (Dkt. 132). On July 1, 2004, Bayside conducted its own inspection of the premises, which did not reveal any code violations (Dkt. 138).

On or about September 13, 2004, Howard Cushman ("Cushman"), a patron of Bayside, fell down a flight of stairs, sustaining injuries (Dkt. 131). After receiving notice of a possible lawsuit, Clarendon retained the services of engineer Tom Black ("Black") to investigate and determine if there was a code compliance issue with the stairs where Cushman fell (Dkt. 132). Clarendon issued a reservation of rights letter to Bayside on June 17, 2005, stating that it felt there would be no coverage for the loss based upon the Warranties and Representations provision contained within the insurance policy (Dkt. 132). On June 27, 2005, Black conducted an inspection of the premises and provided a report to Clarendon dated July 11, 2005 (Dkt. 132). The report indicated that he believed there was a code violation on the stairs (Dkt. 28-5; 132). On September 6, 2005, Clarendon filed an action for Declaratory Relief, seeking a declaration that it had no duty to defend or indemnify Bayside (Dkt. 131). This Court determined that Bayside did not violate the Notice of Suit provision and decided that Clarendon had a duty to defend Bayside against possible litigation by Cushman (Dkt. 138).

Subsequently, Cushman brought a catastrophic injury claim against Bayside in the Thirteenth Judicial Circuit in Hillsborough County, Florida (Dkt. 131), seeking damages for the injuries he

sustained as a result of the company's negligence. Cushman alleged that the flight of stairs failed to comply with building codes; and, as a result of Bayside's failure to detect or repair the dangerous condition, its negligence proximately caused his injuries (Dkt. 131, 131-2). On August 17, 2006, Cushman and Bayside entered a Joint Stipulation and Agreement, resulting with a Settlement Agreement for $2.75 million (Dkt. 131). Final judgment was entered in favor of Cushman on September 13, 2006 (Dkt. 131). Cushman and Bayside sought coverage under Clarendon's insurance policy for the judgment (Dkt. 131). Plaintiff, Clarendon, filed suit against Defendants, Bayside and Cushman, to obtain a determination from this Court of its rights and obligations under the insurance contract at issue (Dkt. 131).

## **STANDARD OF REVIEW**

Summary judgment is appropriate when the facts properly supported by the record and taken in the light most favorable to the non-moving party "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©). The movant bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249.

The court must consider the evidence contained in the record in the light most favorable to the non-movant. *Casey Enter. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981). "The opposing party must counter the moving party's affidavits with opposing affidavits or other competent evidence setting forth specific facts to show that there is a genuine issue of material fact for trial." *United States v. An Article of Drug*, 725 F.2d 976, 984-85 (5th Cir. 1984). The opposing evidence must be based on admissible evidence of facts and may not be based upon conclusory allegations. *Bloodsworth v. Smith & Nephew, Inc.*, 476 F. Supp. 2d 1348 (M.D. Ala. 2006) (quoting *Douglass v. United Serv. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996)). "Factual disputes that are irrelevant or unnecessary will not be counted." *Liberty Lobby*, 477 U.S. at 242. Once the movant meets the initial burden of demonstrating the absence of a genuine issue of material fact, summary judgment is appropriate if the non-movant fails to making a showing to establish the existence of an element essential to its case, which it has the burden of proof at trial. *Celotex*, 477 U.S. at 322.

"In a declaratory judgment action, 'if the allegations in the complaint alleging a claim against the insured either are acts not covered by the policy or are excluded from the policy's coverage, the insurer is not obligated to defend or indemnify the insured.'" *Clarendon Am. Ins. Co. v. Miami River Club, Inc.* 417 F. Supp. 2d 1309, 1317 (S.D. Fla. 2006) (quoting *IDC Constr., LLC v. Admiral Ins. Co.*, 339 F. Supp. 2d 1342, 1347 (S.D. Fla. 2004)).

## DISCUSSION

### I. Plaintiff's Motion for Final Summary Judgment

Plaintiff claims that summary judgment should be entered in its favor because (1) there is no genuine issue of material fact that the stairs at the restaurant did not comply  with applicable

building codes; (2) Bayside was sued because of its failure to comply with such codes; and (3) Bayside's non-compliance was material to the risk and increased the hazard.

The provision in the insurance policy in question here, called the "Representations and Warranties" endorsement, states in pertinent part:

> The Named Insured understands and agrees that the following representations and warranties are material and that the Company is relying on the truthfulness of these representations and warranties, which are made the basis of and a condition for the Company's acceptance of the risks covered by this insurance. The Named Insured further understands and agrees that if any of the following material representations and warranties are false, or if the Named Insured fails to comply with any of the following representations and warranties at any time during the "policy period," the named Insured shall be deemed to have breached this insurance policy. A breach of any of the following representations and warranties will result in this policy not applying to any "claim" or "suit" brought hereunder.

> ***

> B. The Named Insured further represents and warrants that the following are true and correct as of the inception date of the policy and will remain so at all times during the "policy period":

> ***

> 3. The insured premises, including but not limited to all buildings, structures and parking lots, are in compliance with all federal, national, state and local codes and/or requirements as respects fire, light safety (including, but not limited to: the National Fire Protection Association Life Safety Code Standard 101), building construction and building maintenance.

Plaintiff claims that this Court should deny coverage because the insured premises, which includes the stairs where Cushman sustained injuries, did not comply with applicable building codes. However, Defendants argue that a genuine issue of material fact exists as to whether the stairs deviate from such codes. Defendants filed affidavits authenticating both a Certificate of Occupancy for the restaurant and a Risk Survey conducted by Comprehensive Risk Services, Inc. The

Certificate of Occupancy certified that the restaurant was suitable for occupancy and in compliance

with applicable codes. The Risk Survey, which Bayside ordered to be conducted on July 1, 2004,

also did not reveal any code violations. Defendants claim that because of the discrepancy in results

with Black's report, whether or not the stairs complied with building codes remains in dispute.

Defendants' argument is without merit. In Cushman's lawsuit against Bayside, the complaint stated:

> 6. That at said time and place, the Defendants, BAYSIDE RESTAURANT, LLC.
> and CJ MARINA, LLC., negligently installed and/or maintained an unsafe and
> dangerous condition upon said premises, namely the flight of steps leading into the
> restaurant, that was the proximate cause of severe injury to Plaintiff as hereinafter
> alleged.
>
> 12. Said flight of steps do not comply with all federal, national, state and local codes
> and/or requirements as respects fire, life safety (including but not limited to: the
> National Fire Protection Association Life Safety Code Standard 101), building
> construction and building maintenance.

The complaint expressly indicates that the stairs deviated from local building codes. Defendants

cannot now claim that a violation of such codes does not exist.

Defendants further argue that the Representation and Warranties endorsement should not

apply in this case because its terms are ambiguous. They claim that the policy does not define the

term compliance nor does it delineate the parameters of the "and/or" contingency contained

within the provision. Defendants assert that in Florida, ambiguous policy provisions are to be

construed in favor of the insured, *Purrelli v. State Farm Fire & Cas. Co.*, 698 So. 2d 618, 620

(Fla. 2d DCA 1997), and Courts usually find coverage in such instances. *Farrer v. U.S. Fid. &*

*Guar. Co.*, 809 So. 2d 85, 88 (Fla. 4th DCA 2002). However, this Court cannot agree with

Defendants' contention on the ambiguity of this provision. The Representation and Warranties

provision states that the insured premises must comply with either requirements or codes; in

some instances, the applicable codes and requirements may be harmonious, and as such, the insured must comply with both regulations. Further, Defendants' argument that the word "comply" has multiple interpretations is also unpersuasive. The insured premises must conform to Florida building regulations. "If the insurance policy language is unambiguous, courts will apply the policy as written." *Miami River Club*, 417 F. Supp. 2d at 1317 (citing *Hobbs v. Hartford Ins. Co. of the Midwest*, 214 Ill. 2d 11, 291 Ill. Dec. 269, 823 N.E.2d 561, 564 (2005)). Thus, the Representation and Warranties provision is applicable here because of the clear language of the endorsement in the insurance policy.

This Court previously held that the Representation and Warranties provision of the insurance contract in question is enforceable if the violation "increased the hazard" (Dkt. 101). Fla. Stat. § 627.409(2) states:

> a breach or violation by the insured of any warranty, condition, or provision of any … contract of insurance … does not void the policy or contract, or constitute a defense to a loss thereon, unless such breach or violation increased the hazard.

"The statute is designed to prevent the insurer from avoiding coverage on a technical omission playing no part in the loss." *U.S. Aviation Underwriters, Inc. v. Sunray Airline, Inc.*, 543 So. 2d 1309, 1312 (Fla. 5th DCA 1989). The insurer bears the burden of proving that the insured increased the hazard. *Fla. Power & Light Co. v. Foremost Ins. Co.*, 433 So. 2d 536 (Fla. 4th DCA 1983). Clarendon submitted an affidavit containing a copy of Black's report. Black discovered that the stairs deviated from the Florida Building Code's minimum requirements and concluded that this violated the codes and standards. The letter of Black's evaluation states in pertinent part:

2. Stair treads (what persons step on) are required to be a minimum of eleven (11) inches deep. The subject steps were a net of 10" inches deep – 10-5/8 inches minus a 5/8 inch protruding nosing, which is a violation of the applicable Codes.

3. The tread widths were uniform – 10 inches except the top step that had no nosing was 10 ½ inches. Codes permits alternate steps to have a maximum deviation of 3/8 inch which we exceeded by 1/8 inch – violation.

4. The top riser was 7 ½ inches in height with a 7 inch maximum height permitted, which is also a violation.

*** 

The stairway was definitely in violation of today's Codes and Standards in spite of the fact it was inspected by the local Building and Fire Department and a Certificate of Occupancy issued.

Upon signing the insurance policy at issue, Bayside represented to Clarendon that the premises complied with all federal, state, or local codes with respect to building construction and maintenance. "An increase in hazard takes place when a new use is made of the insured property, or when its physical condition is changed from that which existed when the policy was written, and the new use or changed condition *increases the risk assumed by the insurer*." (emphasis added) *Ind. Harbor Coke Co. v. Hartford Steam Boiler Inspection & Ins. Co.*, 107 F. App'x 505, 508 (6th Cir. 2004). Because Bayside warranted to Clarendon that its premises, which includes the stairs in question, complied with all applicable regulations before the insurance policy went into effect, Bayside either misrepresented the condition of the stairs or failed to detect or fix the condition. Nevertheless, this negligence increased the possibility of a loss and the risk assumed by Clarendon. It is a reasonable inference that a code violation on a flight of steps would be an unsafe condition for anyone who uses it. The express purpose and scope of a building code is to protect the health and safety of the public by establishing minimum standards for the design, construction, and structural

strength of all public buildings. *Uebele v. Oehmsen Plastic Greenhouse Mfg., Inc.*, 125 Wis. 2d 431, 434-35 (Wis. App. 1985). Additionally, William Knepper, an expert on insurance matters retained by Defendants, conceded that failing to comply with a building code could increase the likelihood of someone getting hurt on the property (Dkt. 131).

However, Defendants claim that the increase in hazard must have caused Cushman's injuries specifically. Defendants argue that because Cushman appeared visibly intoxicated when he sustained injuries, his alcohol level could have contributed to the fall. Contrary to Defendants' contention, the code violation found on the stairs is, in fact, related to the loss in question. As stated previously, the lawsuit pleaded by Cushman against Bayside alleged that the flight of stairs did not comply with all applicable regulations, and it was because of this unsafe condition that caused Cushman to fall and sustain injuries. Defendants conceded this fact based on the consent judgment that arose from Cushman's complaint. Further, nowhere in the complaint or joint stipulation did the parties conclude that Cushman's alcohol level was a contributing factor to his injuries. "A claim made or position taken in a former action or judicial proceeding will, in general, estop the party to make an inconsistent claim or to take a conflicting position in a subsequent action or judicial proceeding to the prejudice of the adverse party." *Leahy v. Batmasian*, 960 So. 2d 14, 19 (Fla. 4th DCA 2007).

Defendants' claim that the increase in hazard was not within the control of the insured, as required by the statute, because the facts show that Bayside had no reason to appreciate that a code violation existed. However, the stairs were within Bayside's control and it could have discovered the violation. Clarendon does not have a duty to conduct inspections to certify that the insured premises comply with requisite codes and regulations. *See, e.g., Wimberg v. Chandler*, 986 F. Supp. 1447, 1454 (M.D. Fla. 1997); *Bajwa v. Metro. Life Ins. Co.*, 776 N.E.2d

609, 627 (Ill. App. 2002). The duty and responsibility rests upon the insured to maintain its property and conduct necessary inspections to guarantee a safe establishment for its patrons and employees. Clarendon met its burden in providing sufficient evidence that warrants application of the provision. The dangerous condition at issue here did increase the hazard, and, thus, Clarendon's Representation and Warranties endorsement applies. In addition, because the code violation here was related to the loss in question, this Court can apply the Representations and Warranties provision. *Contra Windward Traders, Ltd. v. Fred S. James & Co. of N.Y., Inc.*, 855 F.2d 814, 818 (11th Cir. 1998).

"Where no possibility of coverage exists under an insurance policy, the insurer has no duty to defend and indemnify its insured." *Miami River Club*, 417 F. Supp. 2d at 1317 (citing *State Farm Fire*, 621 N.E.2d at 42). Here, Bayside breached the terms of the Warranties and Representation endorsement contained in Clarendon's policy. Bayside failed to show there remains a genuine issue of material fact with respect to whether a code violation existed and also did not establish why the provision should not apply. Where there is no question of fact regarding the interpretation of the language of an insurance policy, the matter is properly resolved on summary judgment. *Lazzara Oil Co. v. Columbia Cas. Co.*, 683 F. Supp. 777, 779 (M.D. Fla. 1988). Therefore, summary judgment in Clarendon's favor is appropriate.

## II. Defendants' Motion for Final Summary Judgment

Defendants claim there are no genuine issues of material fact because: (1) the choice of law provision in Clarendon's contract requiring application of Illinois law is void and unenforceable; and (2) since Bayside did not violate the Voluntary Payment Provision, it was reasonable for it to protect itself with a stipulated judgment. Defendants request that Clarendon

10

be estopped from asserting application of its Representation and Warranties provision as a basis for non-coverage of the claim because Defendants claim that Clarendon essentially waived its use of the provision when Clarendon's inspection of the restaurant, conducted one month after the policy went into effect, did not detect a code violation with respect to the stairs at issue.

Defendants contend that the proper law to be applied to resolve the issues in this matter is Florida law because: (1) the policy was issued for delivery and was delivered in Florida; and (2) Florida has a strong interest in regulating insured risks located within the state. However, Defendants fail to acknowledge, "Florida respects choice-of-law provisions in contracts." *Miami River Club*, 417 F. Supp. 2d at 1317 (citing *Shaps v. Provident Life & Accident Ins. Co.*, 826 So. 2d 250, 254 (Fla. 2002)). The doctrine of *lex loci contractus*, which is followed in Florida, declares that if a contractual provision is silent on what the governing law is, a contract is governed by the law of the state in which the contract is made. *Id*. Here, the Clarendon policy provides that Illinois law governs (Dkt. 131-3). Section IV of the insurance policy states:

> **33. Choice of Law.**
> This policy, and all disputes relating to the parties' obligations under this policy, shall be interpreted, construed, governed by and enforced in accordance with the laws of the State of Illinois.

There are no public policy issues with the Clarendon choice of law provision that warrants this Court to change the governing law decided by the parties. *Id*. In addition, courts should not rewrite insurance policies that have been agreed upon by the parties. *Sunray Airline*, 543 So. 2d at 1312. Therefore, Defendants' contention that Florida law governs is incorrect and the doctrine of *lex loci contractus* is inapplicable in this case. Since Illinois law governs, Clarendon does not necessarily owe coverage for the loss at issue as a matter of law.

Defendants also claim that Clarendon's inspection conducted by Sutton waived Clarendon's right in applying the Warranties and Representations endorsement. They allege that Clarendon affirmatively led Bayside into a false sense of security when the inspection failed to identify issues with the stairs. Defendants request that Clarendon be estopped from relying upon the endorsement and denying coverage because it fraudulently collected premiums after representing to Bayside that there were only three issues that needed correction to keep its coverage. However, Defendants failed to mention that Clarendon renewed the insurance policy on December 5, 2004, but Clarendon reviewed Black's report sometime after July 11, 2005. These facts suggest that Plaintiff did not fraudulently accept premiums from Bayside as alleged by Defendants. In fact, Clarendon sent Bayside a Notice of Non-Renewal on October 21, 2005, when it had knowledge that a violation existed. Additionally, the insurance policy stated that Clarendon had no duty to inspect the premises or warrant that the insured premises complied with all laws, regulations, or codes when it elects to conduct inspections. The pertinent part of the policy provides:

**8. Inspection and Surveys.**

We have the right but are not obligated to:

     a.    Make inspections and surveys at any time;
     b.    Give you reports on the conditions we find; and
     c.    Recommend changes as such conditions.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public.

And we do not warrant that conditions:

12

      a.     Are safe or healthful; or

      b.     Comply with laws, regulations, codes, or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organizations which makes insurance inspections, surveys, reports or recommendations on our behalf.

The language in the provision is clear: Bayside was not to rely upon the Sutton inspection. As such, Bayside's assertion that Clarendon waived its application of the Warranties and Representations endorsement is without merit. Although Illinois law allows courts to apply promissory estoppel to insurance contracts, the insured must prove that: (1) the insurer made an unambiguous promise to the insured, (2) the insured relied on such promise, (3) the insured's reliance was expected and foreseeable by the insurer, and (4) the insured relied on the promise to its detriment. *Chatham Surgicore, LTD v. Healthcare Serv. Corp.*, 826 N.E.2d 970, 974 (Ill. App. 2005). The misrepresentation must be reasonably and justifiably relied upon and caused the insured injury. *Id.* However, where, as here, the provision expressly discourages the insured to rely on any inspections the insurer chooses to conduct, promissory estoppel is inapplicable.

Further, Bayside argues summary judgment should be entered in its favor because it did not violate Clarendon's Voluntary Payment Provision when it entered into a stipulated judgment with Cushman. The Voluntary Payment Provision at issue here provides:

**2. Duties in the Event of "Occurrence", "Offense", "Claim" or "Suit".**

***

      c.     You and any other involved insured must:

13

(1)      Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

\*\*\*

Cooperate with us in the investigation or
settlement of the "claim" or defense against the "suit";

\*\*\*

No insureds will, except at their own cost, voluntarily make a
payment, assume any obligation, or incur any expense without our consent;

No insured shall in any way jeopardize our rights after an occurrence" or
"offense" takes place.

Defendants erroneously cite Florida law as a basis for its assertion that this Court should bind Clarendon to the settlement agreement. They claim that Clarendon must cover the $2.75 million settlement because in Florida, even if the insured does not consult with the insurer, a stipulated judgment is binding when the insurer denies coverage and the insured seeks to protect itself with the judgment. *See Ahern v. Odyssey Re Ltd.*, 788 So. 2d 369, 372 (Fla. 4th DCA 2001). However, this Court previously declared that Illinois law governs this case. Therefore, Clarendon's filing of the declaratory action precluded Bayside from defending the claims against it and entering into a settlement agreement with Cushman without Clarendon's consent. *See Guillen v. Potomac Ins. Co. of Ill.*, 323 Ill. App. 3d 121, 751 N.E.2d 104, 114 (2001). Bayside also breached the terms of the provision when it failed to provide Clarendon with a copy of the summons or legal papers received from Cushman before the settlement and when it assumed an obligation to make a settlement agreement without Clarendon's consent.

14

When "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party", there is a genuine issue of fact and summary judgment is defeated. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Copr.*, 475 U.S. 574, 587 (1986). Here, Defendants failed to show that a reasonable jury could not find for Plaintiff. Therefore, summary judgment in favor of Defendants is precluded.  Accordingly, it is

**ORDERED** that Plaintiff's Motion for Summary Judgment (Dkt. 131) is **GRANTED** and Defendants' Motion for Summary Judgment (Dkt. 132) is **DENIED**. The Clerk of Court is **directed** to enter judgment in favor of Plaintiff, relinquishing Plaintiff of any duty to indemnify Bayside for any claims brought against it by Cushman; and (2) denying coverage to Bayside for the $2.75 settlement agreement between the Defendants. Further, the Clerk of Court is directed to close this case.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 2nd day of July, 2008.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All parties and counsel of record

15